## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

ELAINE WANG,                                           :
                                                       :
                    Plaintiff,                         :    Civil Action No. _____
                                                       :
v.                                                     :
                                                       :    **COMPLAINT FOR VIOLATIONS OF**
FRONT YARD RESIDENTIAL                                 :    **SECTIONS 14(a) AND 20(a) OF THE**
CORPORATION, ROCHELLE R. DOBBS,                        :    **SECURITIES EXCHANGE ACT OF**
LELAND ABRAMS, GEORGE G. ELLISON,                      :    **1934**
MICHAEL A. ERUZIONE, LESLIE FOX,                       :
WADE J. HENDERSON, LAZAR NIKOLIC,                      :    **JURY TRIAL DEMANDED**
GEORGE WHITFIELD MCDOWELL, and                         :
PRETIUM MIDWAY HOLDCO, LP,                             :
                                                       :
                    Defendants.                        :
--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Front Yard Residential Corporation

("Front Yard" or the "Company") and the members of the Front Yard board of directors (the

"Board" or the "Individual Defendants," and collectively with the Company and Parent (defined

below), the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Front

Yard by affiliates of Pretium Partners, LLC and funds managed by the real estate equity and

alternative credit strategies of Ares Management Corporation (together the "Pretium Partnership").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on November 23, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders.  The Proxy Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby the Company will merge with and into Midway AcquisitionCo REIT ("Merger Sub"), a Maryland real estate investment trust and a direct wholly-owned subsidiary of Pretium Midway Holdco, LP, a Delaware limited partnership ("Parent"), with Merger Sub surviving the merger as a wholly-owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Front Yard common share issued and outstanding will be converted into the right to receive $16.25 (the "Merger Consideration").

3.      As discussed below, Defendants have asked Front Yard stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Deutsche Bank Securities Inc. ("Deutsche Bank"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Front Yard stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Pretium and Parent were formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Front Yard common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Rochelle R. Dobbs has served as a member of the Board since December 2016 and has been the Chair of the Board since May 2018.

11. Individual Defendant Leland Abrams has served as a member of the Board since June 2019.

12. Individual Defendant George G. Ellison ("Ellison") has served as a member of the Board and the Company's Chief Executive Officer ("CEO") since June 2015. Ellison is also the

co-CEO of Altisource Asset Management Corporation ("AAMC"), a company with which Front Yard has an existing asset management agreement.

13.     Individual Defendant Michael A. Eruzione has served as a member of the Board since December 2012.

14.     Individual Defendant Leslie Fox has served as a member of the Board since 2019.

15.     Individual Defendant Wade J. Henderson has served as a member of the Board since April 2017.

16.     Individual Defendant Lazar Nikolic has served as a member of the Board since February 2017.

17.     Individual Defendant George Whitfield McDowell has served as a member of the Board since March 2018.

18.     Defendant Front Yard is incorporated in Maryland and maintains its principal offices at 5100 Tamarind Reef, Christiansted, United States Virgin Islands 00820.  The Company's common stock trades on the New York Stock Exchange under the symbol "RESI."

19.     Defendant Parent is a Delaware limited partnership and a party to the Merger Agreement.

20.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**     **The Proposed Transaction**

22.     Front Yard, formerly Altisource Residential Corporation, is a real estate investment trust ("REIT").  The Company focuses on acquiring, owning and managing single-family rental

("SFR") properties throughout the United States.  The Company conducts its activities through its subsidiary, Altisource Residential, L.P., and its subsidiaries.  The Company also converts a portion of the real estate owned properties that it acquires through resolution of its mortgage loans into SFR properties.  The Company has also entered into property management service agreements with two third-party property managers: Altisource Portfolio Solutions, SA and Main Street Renewal, LLC, to provide, among other things, leasing and lease management, operations, maintenance, repair and property management services in respect of its SFR portfolios.

23.     On October 19, 2020, Pretium Partnership jointly announced the Proposed Transaction in which Pretium would acquire Front Yard in an all-cash transaction that values Front Yard at $2.4 billion.  The October 19, 2020 transaction was amended on November 23, 2020:

> CHRISTIANSTED, U.S. Virgin Islands, Nov. 23, 2020 (GLOBE NEWSWIRE) -- Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), an industry leading provider of high-quality and affordable rental homes, announced today that it has amended its definitive merger agreement with a partnership led by Pretium and including funds managed by the Real Estate Equity and Alternative Credit strategies of Ares Management Corporation (NYSE: ARES) (together, the "Pretium Partnership") to increase the consideration payable to holders of outstanding shares of Front Yard stock to $16.25 per share in cash from $13.50 per share in cash, which values the Company at approximately $2.5 billion, including debt to be assumed or refinanced. The revised transaction price represents a 63% premium over Front Yard's closing share price on October 16, 2020, the last trading day prior to the date on which the Company entered into the merger agreement.
>
> Front Yard and the Pretium Partnership negotiated the amendment following the receipt by Front Yard of an unsolicited binding proposal (the "Proposal") from an unaffiliated third party to acquire all outstanding shares of Front Yard common stock. The board of directors (the "Board") of Front Yard, in consultation with its legal and financial advisors, carefully considered the terms of the Proposal and the amended Pretium Partnership transaction and determined that entering into the amendment to the Pretium Partnership merger agreement was in the best interests of Front Yard and its stockholders. Front Yard's Board approved the amended merger agreement and recommends that

Front Yard's stockholders vote in favor of the amended Pretium Partnership merger agreement.

"We are confident in the strategic and financial rationale of this transaction, and continue to believe it is the best way to maximize immediate cash value for our stockholders," said George Ellison, Chief Executive Officer of Front Yard.

"After receiving a binding proposal reflecting a higher purchase price for Front Yard, Front Yard advised the Pretium Partnership of the proposal as required by the terms of the merger agreement, which led to the Pretium Partnership increasing the price of our transaction with them," said Rochelle R. Dobbs, Front Yard's Chair of the Board. "Following these discussions, our Board approved the amendment to the merger agreement. We believe the amended merger agreement is a result of a well-run sales process that allows our stockholders to realize higher value for their shares."

"We believe in this Company and the Front Yard team and remain committed to completing this transaction," said Don Mullen, Pretium's Chairman and Chief Executive Officer.

Front Yard will file a current report on Form 8-K with the U.S. Securities and Exchange Commission containing a summary of the terms and conditions of the amendment to the definitive merger agreement.

The transaction is expected to close in the first quarter of 2021, subject to the approval of the holders of a majority of Front Yard's outstanding shares and the satisfaction of customary closing conditions.

**Advisors**

Deutsche Bank Securities Inc. is serving as financial advisor to Front Yard and Weil, Gotshal & Manges LLP is serving as Front Yard's legal counsel.

RBC Capital Markets, LLC is serving as financial advisor to Pretium. BofA Securities is serving as financial advisor to Ares. Sidley Austin is serving as M&A legal counsel, Fried Frank as partnership legal counsel, and Hunton Andrews Kurth as special tax and financing counsel to Pretium. Latham & Watkins is serving as legal counsel to Ares.

\* \* \*

24.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction.  It is therefore imperative that Front Yard's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25.     On November 23, 2020, Front Yard filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Front Yard Financial Projections and Deutsche Bank's Financial Analyses*

26.     The Proxy Statement fails to provide material information concerning financial projections prepared by Front Yard management and relied upon by Deutsche Bank in its analysis. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Front Yard management provided to the Board and the

financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2024: Rental Net Operating Income, Core Funds From Operations, and Adjusted Funds From Operations, but fails to provide all line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 40-41.

28. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

31.     With respect to Deutsche Bank's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) all line items used to calculate the free cash flows estimated to be generated by the Company for the fourth quarter of 2020 and the years 2021 to 2024; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.75% to 8.25%; (iii) range of terminal values for the Company and the basis for applying a perpetual growth rate range between 2.75% and 3.25%; and (iv) the Company's after-tax cost of debt and net debt. Proxy Statement at 47.

32.     With respect to Deutsche Bank's *Transaction Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Deutsche Bank in the analysis; and (ii) the premiums paid in the transactions.

33.     With respect to Deutsche Bank's *Present Value Analysis*, the Proxy Statement fails to disclose: (i) Deutsche Bank's basis for selecting Core FFO multiples of 10x to 16x; and (ii) the inputs and assumptions underlying the discount rate of 12.5% selected by Deutsche Bank.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Deutsche Bank and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Front Yard within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Front Yard, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Front Yard, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Front Yard, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 24, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*